**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| THOMAS ALSTON,<br><br>    Plaintiff,<br><br>       v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Civil Action No. 8:12-cv-03671-AW |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas Alston is a natural person who resides in Maryland. Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") is a national banking association. The crux of Plaintiff's Complaint is that Defendant violated his federal statutory and common law rights by failing to properly investigate whether he had a delinquent mortgage account.

The dispute traces to the 2004 period. Around that time, Plaintiff obtained a mortgage loan from BNC Mortgage for a Washington, D.C. property ("the property"). After various transactions, America's Servicing Company ("ASC") became the servicer of the loan. ASC is a division of Wells Fargo Home Mortgage ("WFHM"). WFHM, according to Plaintiff, merged into Wells Fargo.

In November 2004, Plaintiff alleges that he paid the mortgage loan in full in a sale between himself and the property's buyer, Christian Anderson. Plaintiff further alleges that he filed a Grant Deed memorializing the sale in the D.C. Recorder of Deeds. Additionally, Plaintiff alleges that, although he satisfied the mortgage loan in November 2004, Wells Fargo failed to file the Certificate of Satisfaction in the D.C. Recorder of Deeds until March 2006.

In September 2009, Plaintiff obtained copies of his credit reports from Equifax, Experian, and Transunion ("credit bureaus"), thereby learning that ASC had reported the mortgage account as a foreclosure and/or 120 days past due. In December 2009, Plaintiff sent the credit bureaus dispute letters. Plaintiff stated in the letters that the Wells Fargo account had never been delinquent or in foreclosure, and was paid in full as of November 2004. Plaintiff alleges that he supplemented his dispute letters with a copy of the Grant Deed that showed that he had paid the mortgage in full during the sale between himself and Anderson. Plaintiff asked the credit bureaus to investigate the account and remove it from his credit reports. Allegedly, the credit bureaus forwarded Plaintiff's disputes to Wells Fargo. In January 2010, Wells Fargo instructed the credit bureaus to continue reporting the account as in foreclosure and 120 days past due.

In March 2010, Plaintiff sent the credit bureaus another round of dispute letters. Plaintiff stated that he was dissatisfied with the credit bureaus' investigation results and demanded that they thoroughly investigate the account.

In April 2010, Plaintiff received an updated credit report from Transunion. The report showed that Wells Fargo had instructed Transunion to remove the "Foreclosure initiated" remark on Plaintiff's report but to continue reporting the account as 120 plus days past due as of April 2005.

In May 2010, Wells Fargo sent Plaintiff correspondence. The correspondence stated that ASC had acquired the loan and that the loan was valid. The letter further stated that Wells Fargo regarded the matter as resolved and would not respond to any further inquiries.

In July 2011, Plaintiff again obtained copies of his credit report. The reports showed that Wells Fargo was instructing the credit bureaus to report the account as 120 days past due in January 2005 and as paid/closed in June 2006.

Plaintiff visited the D.C. Recorder of Deeds. He found a Certificate of Satisfaction from Wells Fargo filed in March 2006. The document stated that the mortgage loan had been satisfied in March 2006.

In July 2011, Plaintiff forwarded more dispute letters to the credit bureaus. Plaintiff's letters noted that, although Plaintiff's most recent credit report showed that Wells Fargo had reported his account as paid/closed in June 2006, the Certificate of Satisfaction Wells Fargo filed in the D.C. Recorder of Deeds stated that the account had been satisfied in March 2006.

Allegedly, the credit bureaus again forwarded the dispute to Wells Fargo for investigation. In response, Wells Fargo instructed (1) Transunion to delete the account; (2) Equifax to continue reporting the account as 120 days past due and closed in June 2006; and (3) Experian to continue reporting the account as delinquent and closed in June 2006. However, after subsequent disputes, Wells Fargo instructed Experian to modify the reporting of the account to "never late."

In October 2011, Plaintiff disputed the Wells Fargo account with Equifax. Equifax forwarded the dispute to Wells Fargo and Wells Fargo instructed Equifax to continue reporting the account as 120 days past due and closed in June 2006.

Defendant removed this case on December 14, 2012. Doc. No. 1. The Clerk registered the Complaint on the same day. Doc. No. 2. Based on the foregoing allegations, Plaintiff asserts claims for violation of the Fair Credit Report Act (FCRA) and defamation. Defendant moved to dismiss on December 19, 2012. Doc. No. 8. Defendant's Motion is ripe.

## II.      STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.    LEGAL ANALYSIS

## A.    FCRA

### 1.    *Statute of Limitations*

Defendant asserts that Plaintiff's claim under section 1681s-2(b) of the FCRA is time-barred. A two-year statute of limitations governs claims under section 1681s-2(b). *See TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001) (citing 15 U.S.C. § 1681p). Section 1681p provides as follows:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

Paragraph (1) applies in this case. As Plaintiff filed suit on December 14, 2012, he cannot assert claims for violations that occurred before December 14, 2010. Here, Plaintiff alleges that actions that may, either individually or collectively, violate section 1681s-2(b) occurred on the following dates: (1) September 2009; (2) March 2010; (3) April 2010; (4) May 2010; (5) July 2011; and (6) October 2011. Plaintiff may not assert a section 1681s-2(b) claim for violations

occurring on dates (1)-(4) because they fall before December 14, 2010. However, Plaintiff may

assert a section 1681s-2(b) claim for violations occurring on dates (5)-(6) as they fall within the

two-year window.

       *2.*      *Failure to State a Claim*

      Alternatively, Defendant argues that Plaintiff has failed to state a cognizable section

1681s-2(b) claim. Section 1681-2(b) provides as follows:

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with

regard to the completeness or accuracy of any information provided by a person

to a consumer reporting agency, the person shall—

      (A) conduct an investigation with respect to the disputed information;

      (B) review all relevant information provided by the consumer

reporting agency pursuant to section 1681i(a)(2) of this title;

      (C) report the results of the investigation to the consumer reporting

agency;

      (D) if the investigation finds that the information is incomplete or

inaccurate, report those results to all other consumer reporting agencies to

which the person furnished the information and that compile and maintain

files on consumers on a nationwide basis; and

      (E) if an item of information disputed by a consumer is found to be

inaccurate or incomplete or cannot be verified after any reinvestigation

under paragraph (1), for purposes of reporting to a consumer reporting

agency only, as appropriate, based on the results of the reinvestigation

promptly—

>> (i) modify that item of information;

>> (ii) delete that item of information; or

>> (iii) permanently block the reporting of that item of
>> information.

15 U.S.C. § 1681s-2(b).

A recent District of Maryland opinion distills these provisions. *See Ausar-El v. Barclay Bank Del.*, Civil No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012) (citation omitted). In *Ausar-El*, Judge Messitte observes that "[s]ection 1681 s–2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information." *Id.* (citation omitted). "Furnishers of information typically are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." *Id.* (citation and internal quotation marks omitted). "Under § 1681s–2(b), a furnisher . . . is only required to investigate information it has provided if a consumer reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information." *Id.* (citations omitted). "Thus, to bring a claim under § 1681s–2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to [reasonably] investigate and modify the inaccurate information." *See id.* (citations omitted); *cf. Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added) ("[Section] 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a

**reasonable investigation** of their records to determine whether the disputed information can be verified.").

In this case, Plaintiff states a cognizable section 1681s-2(b) claim. As to element (1), Plaintiff alleges that he sent the credit bureaus dispute letters in both July and October 2011. Regarding element (2), Plaintiff alleges that the credit bureaus forwarded both disputes to Wells Fargo. Plaintiff's allegations also make it plausible that Wells Fargo failed to reasonably investigate and modify the disputed information. Plaintiff alleges that Wells Fargo filed a Certificate of Satisfaction showing that his account was satisfied in March 2006 and still reported it as paid/closed in June 2006. Plaintiff also alleges that, after the credit bureaus forwarded Plaintiff's dispute for investigation, Wells Fargo instructed them to take inconsistent remedial measures. According to Plaintiff, Wells Fargo instructed Transunion to delete the account, Equifax to report it as 120 days past due and closed in June 2006, and (3) Experian to report it as delinquent and closed in June 2006. Plaintiff further alleges that Wells Fargo later instructed Experian to modify the reporting of the account to "never late." Additionally, Plaintiff alleges that Wells Fargo continued to instruct Equifax to report the Wells Fargo account as 120 days past due and closed in June 2006. These allegations support the inference that Wells Fargo knew or should have known that Plaintiff's account was not delinquent and still instructed the credit bureaus to report it as such. Likewise, in alleging that Wells Fargo instructed the credit bureaus to take inconsistent remedial measures despite possessing the same information, Plaintiff's Complaint supports an inference of carelessness on Wells Fargo's part. Accordingly, Plaintiff has stated a cognizable section 1681s-2(b) claim.

Defendant's counterarguments lack merit. Defendant's core argument is that Plaintiff's own allegations demonstrate that Wells Fargo investigated his account. This argument misses the

point. The issue is not whether Wells Fargo made any effort whatsoever to investigate Plaintiff's disputes. Rather, the question is whether, after the credit bureaus notified it of Plaintiff's disputes, Wells Fargo failed to reasonably investigate and modify the allegedly inaccurate information. Here, for the reasons stated above, Plaintiff has adequately alleged that Wells Fargo failed in this regard. Accordingly, the Court denies Defendant's Motion to Dismiss as to Plaintiff's FCRA claim.

**B.      Defamation**

Defendant argues that the FCRA preempts Plaintiff's defamation claim. Defendant's argument overlaps considerably with one the Court recently rejected in a related case. *See Alston v. Cavalry Portfolio Servs., LLC*, Civil Action No. 8:12–cv–03589–AW, 2013 WL 665036, at *5–6 (D. Md. Feb. 22, 2013). Defendant relies on section § 1681t(b) of the FCRA to support its argument that the FCRA preempts Plaintiff's defamation claim. Pertinently, section 1681t(b) provides as follows:

No requirement or prohibition may be imposed under the laws of any State—

(1) with respect to any subject matter regulated under—

***

(F) section 1681s-2 of this title, relating to the responsibilities of

persons who furnish information to consumer reporting agencies, . . . .

15 U.S.C. § 1681t(b). In essence, Defendant asserts that Plaintiff piggybacks his defamation claim onto his section 1681s-2(b) claim and concludes that section 1681t(b) preempts it.

Plaintiff responds that defamation claims are subject to section 1681h(e) of the FCRA, not section 1681t(b). In relevant part, section 1681h(e) provides:

[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information

> against any consumer reporting agency, any user of information, or any person
> who furnishes information to a consumer reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on
> information disclosed by a user of a consumer report to or for a consumer against
> whom the user has taken adverse action, based in whole or in part on the report
> except as to false information furnished with malice or willful intent to injure
> such consumer.

15 U.S.C. § 1681h(e). Plaintiff then cites a Judge Chasanow opinion for the proposition that "§ 1681t(b) pre-empts only state statutes, whereas § 1681h(e) pre-empts state common law." *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 478 (D. Md. 2006). As explained in the related case, *Beuster* is a carefully reasoned opinion, and the Court has found no published authority in this District contradicting its conclusion. Defendant concedes as much. *See* Def.'s Reply Supp. Mot. Dismiss, Doc. No. 12 at 10 ("Nearly all of the district courts in this circuit, including this Court have applied the third approach—the 'statutory approach'—to reconciling the two seemingly overlapping preemption provisions in FCRA . . . .").

Despite this concession, Defendant contends that two Circuits have rejected the proposition that 1681t(b) applies only to state statutes. *See* Def.'s Reply Supp. Mot. Dismiss, Doc. No. 12 at 11–12 (citing *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2113 (2012); *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011)). Although these cases may constitute persuasive authority to the contrary, they do not bind this Court. As Defendant notes, the Fourth Circuit has yet to consider the interplay between sections 1681t(b) and 1681h(e). Considering the unsettled state of the applicable law and that most district judges in the Fourth Circuit have concluded that 1681t(b) applies only to state statutes, it makes sense to follow *Beuster*'s rule that section 1681t(b) preempts only state statutes, whereas section 1681h(e) preempts state common law.

The next issue is whether section 1681h(e) preempts Plaintiff's defamation claim. *Beuster* establishes a relatively low bar for stating a cognizable defamation claim in face of section 1681h(e). *Beuster* declares that section 1681h(e) comes into play where the plaintiff's "defamation claim involves the reporting of information, and is brought against a person who furnished information to a consumer reporting agency." 435 F. Supp. 2d at 479. *Beuster* then observes that plaintiffs may aver malice generally for the purpose of defamation claims. *See id.* at 480 (citations omitted). Here, Plaintiff alleges that his defamation claim involves Defendant's (the furnisher's) reporting of information to credit bureaus (consumer reporting agencies). Plaintiff also alleges that "Wells Fargo intentionally and maliciously instructed Equifax to report publicly that Plaintiff had a delinquent mortgage account." Doc. No. 2 ¶ 37. Defendant insists that this allegation amounts to a "threadbare recital" of one of the elements of defamation. But Defendant itself observes that, under Rule 9 of the Federal Rules of Civil Procedure, "[m]alice . . . may be alleged generally." Fed. R. Civ. P. 9(b). Whatever the effect of *Twombly* and *Iqbal* on pleading generally, there is no indication that they aimed to abrogate Rule 9's dictate that malice may be alleged generally. Furthermore, taken as true and construed favorably, Plaintiff's allegations may support a plausible inference of malice. Therefore, assuming that one must adequately allege malice to state a cognizable defamation claim in face of section 1681h(e), Plaintiff has done so.

It is unclear, however, that Plaintiff must allege malice to state a cognizable defamation claim in face of section 1681h(e). By its letter, as Defendant acknowledges, section 1681h(e) does not apply to Plaintiff's defamation claim. It is hard to see how the FCRA could preempt a common law defamation claim where, as here, the preemption provision that applies to common law defamation claims does not, at least on its face, apply. Defendant urges the Court to apply

section 1681t(b) as a contingency. But this argument ignores *Beuster*'s rule that section 1681t(b) applies only to state statutes. Therefore, absent contrary controlling authority, the Court declines to apply 1681t(b) to fill the gap left by 1681h(e). Extrapolated to its logical extremity, Defendant's preemption argument appears to proceed from the premise that Congress intended the FCRA to preempt every common law defamation action plaintiffs base, at least in substantial part, on the same occurrence or series of occurrences on which they base a FCRA claim. Although the Court does not discount this possibility, Defendant has yet to identify statutory text, legislative history, or controlling caselaw compelling this conclusion. Accordingly, the Court denies Defendant's Motion to Dismiss as to Plaintiff's defamation claim.

**C.    Estoppel**

Finally, Defendant argues that estoppel bars Plaintiff's Complaint. Defendant notes that Plaintiff has pursued claims for erroneous credit reporting against other entities. Defendant asserts that Plaintiff based these cases on the "very same wrongs and damages." Defendant observes that Plaintiff received settlements in some of these cases. In the related case, the Court noted that "Mr. Alston and his family are engaged in an enterprise of Fair Credit Reporting Act litigation, and are profiting from it." *Alston*, 2013 WL 665036, at *1 (citation and internal quotation marks omitted). In view of the foregoing, Defendant asserts that Plaintiff cannot recover in this case because to do so would constitute an impermissible double recovery (or more).

This argument fails. The Fourth Circuit has considered a similar argument. *See Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500–01 (4th Cir. 2007).The *Sloane* court held that the "one satisfaction rule" does not apply where a plaintiff pursuing a FCRA claim provides credible evidence that his damages result from separate acts by separate parties. Here, Defendant does not

seem to dispute that the other lawsuits involved different defendants. Furthermore, given the early posture of the case, it is plausible that the alleged damages flowed, at least in part, from separate acts. Moreover, the *Sloane* court stated in a footnote that it is unclear that the one satisfaction rule applies to FCRA claims. *See id.* at 501 n.2 (citation omitted). Accordingly, at least at this juncture, the one satisfaction rule does not bar Plaintiff's claims.[1]

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. A separate Order follows. The Court will issue a pro se Scheduling Order.

| | |
|---|---|
| March 12, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[1] While this may be true, the Court notes that the case is in its early stages. Depending on the evidence developed in discovery, Plaintiff's claims could be subject to estoppel, and Plaintiff himself could be subject to sanctions.