IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

THOMAS ALSTON,

    Plaintiff,

    v.

WELLS FARGO BANK, N.A.,

    Defendant.

Civil Action No. 8:12-cv-03671-AW

## MEMORANDUM OPINION

Ripe and pending before the Court are Plaintiff's Motion for Leave to File Amended Complaint, Plaintiff's Motion for Partial Summary Judgment, and Plaintiff's Motion to Extend Discovery Deadline. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **DENIES** Plaintiff's Motion to Amend, **DENIES** Plaintiff's Motion for Partial Summary Judgment, and **GRANTS IN PART** Plaintiff's Motion to Extend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas Alston resides in Maryland. Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") is a national banking association. The crux of Plaintiff's Complaint is that Defendant violated his federal statutory and common law rights by failing to properly investigate whether he had a delinquent mortgage account.

On May 27, 2004, Plaintiff and nonparty Christian Anderson executed a Note in the amount of $316,000 ("Note" or "BNC Note"), and an accompanying Deed of Trust, on real property located at 2306 N. Capitol St. NW, Washington, D.C. 2002 ("the Property"). Doc. No. 32-1; Doc. No. 34-2. The Note names BNC Mortgage, Inc. as lender. On November 8, 2004,

1

Plaintiff and Anderson executed a Deed ("Grant Deed") purporting to convey Plaintiff's interest in the Property to Anderson for the amount of $300,000. Doc. No. 34-3 at 2. Inconsistent with Plaintiff's allegation that he "paid the mortgage loan in full in a sale between himself and [Anderson]," Doc. No. 2 ¶ 4, the Deed does not specify whether Plaintiff paid Anderson any part of the $300,000 sum, let alone the noteholder. *See* Doc. No. 34-2 at 2.

Indeed, documents produced during discovery flatly contradict Plaintiff's assertion that he paid the BNC Note. In August 2004, Plaintiff (seller) and Anderson (buyer) entered into a sales contract by which Plaintiff purported to sell his interest in the Property to Anderson for $300,000. Doc. No. 34-4 at 8. Commercial Lending, LLC loaned, or planned to loan, Anderson the money necessary to finance the purchase of the property. *See id.* at 21–23. In connection with the purported sale, Anderson purchased title insurance from Stewart Title Guaranty Company (Stewart) in the amount of $360,000. *See id.* at 9–18.

After closing, no one satisfied the BNC Note. *See id.* at 26–27. Thereafter, Anderson, Stewart, and Wells Fargo (as servicer) engaged in negotiations. Eventually, a foreclosure sale took place and, in August 2005, Alvin Gross, Jr. purchased the Property. *Id.* at 40. Gross later released his interest in the Property and the parties continued their negotiations. In February 2006 or thereabouts, Stewart and Wells Fargo reached a settlement by which Stewart paid Wells Fargo $330,792 and Wells Fargo assigned the Note and Deed of Trust to Stewart. On March 13, 2006, America's Servicing Company (as division of Wells Fargo) filed a Certificate of Satisfaction in the D.C. Recorder of Deeds stating that the BNC Note had been satisfied. *Id.* at 65.

On July 17, 2011, Plaintiff obtained copies of his credit report. Allegedly, the reports showed that Wells Fargo was instructing the three major credit bureaus ("credit bureaus") to report the BNC account as 120 days past due in January 2005 and as paid/closed in June 2006.

On July 26, 2011, Plaintiff forwarded dispute letters to the credit bureaus. Plaintiff's letters stated that, although Plaintiff's most recent credit report showed that Wells Fargo had reported his account as paid/closed in June 2006, the Certificate of Satisfaction stated that the account had been satisfied in March 2006.

In response, the credit bureaus allegedly forwarded the dispute to Wells Fargo for investigation. Thereafter, Wells Fargo allegedly instructed (1) Transunion to delete the account; (2) Equifax to continue reporting the account as 120 days past due and closed in June 2006; and (3) Experian to continue reporting the account as delinquent and closed in June 2006. After subsequent disputes, Wells Fargo allegedly instructed Experian to modify the reporting of the account to "never late."

In October 2011, Plaintiff alleges that he disputed the Wells Fargo account with Equifax. Equifax allegedly forwarded the dispute to Wells Fargo and Wells Fargo instructed Equifax to continue reporting the account as 120 days past due and closed in June 2006.

Defendant removed this case on December 14, 2012. Doc. No. 1. The Clerk registered the Complaint on the same day. Doc. No. 2. Plaintiff asserts claims for violation of the Fair Credit Report Act (FCRA) and defamation. Defendant moved to dismiss on December 19, 2012. Doc. No. 8. The Court granted in part and denied in part Defendant's motion, Doc. Nos. 17–18, precluding Plaintiff from basing his FCRA claim on relevant actions occurring before December 14, 2010.

Defendant answered. Doc. No. 22. Then Plaintiff filed a Motion for Leave to File an Amended Complaint ("Motion to Amend"). Doc. No. 24. Through this Motion, Plaintiff seeks to add a claim for breach of contract. Plaintiff predicates this claim on allegations that, in violation of the "mortgage contract," Wells Fargo failed to "surrender the note" upon Plaintiff's satisfaction of the underlying debt. Doc. No. 24-2 at 9.

On June 27, 2013, Plaintiff filed a Motion for Partial Summary Judgment. Doc. No. 32. Plaintiff argues that the discovery record establishes that Wells Fargo is not the holder of the BNC Note. Plaintiff thus maintains that Wells Fargo lacked the right to enforce the BNC Note. Consequently, Plaintiff concludes that Wells Fargo's alleged reporting that Plaintiff had a delinquent mortgage account is, in essence, per se inaccurate under the FCRA. The Parties have fully briefed this Motion.

On July 25, 2013, one day before the expiration of the discovery deadline, Plaintiff filed a Motion to Extend Discovery Deadline ("Motion to Extend"). Doc. No. 39; *see also* Doc. No. 19 at 2. Through his Motion to Extend, Plaintiff seeks to extend the discovery deadline for 90 days. In support of this request, Plaintiff states as follows: Defendant has stated that the credit bureaus have not given it relevant documents; Plaintiff has subpoenaed said documents from the credit bureaus; the Court recently granted Defendant's motion to compel the credit bureaus to produce the same or similar documents; Plaintiff needs to review the subpoenaed documents before scheduling depositions of representatives of Wells Fargo and, possibly, the credit bureaus.

Defendant opposes Plaintiff's Motion to Extend in part. Defendant does not oppose Plaintiff's request for an extension of the discovery deadline "[t]o the extent necessary to compel the production of the subpoenaed record from [the credit bureaus]." Doc. No. 41 ¶ 5. However, Defendant opposes Plaintiff's request to subpoena Wells Fargo representatives. In support of its

opposition, Defendant notes that (1) Plaintiff originally noticed four depositions, to which Defendant objected in part; and (2) Plaintiff withdrew three of his noticed depositions and voluntarily cancelled the fourth. *See* Doc. No. 41-4. The email in which Plaintiff cancels the fourth deposition states as follows: "If we are not able to agree to a stipulated dismissal then I will move to extend the discovery deadline." *Id.* at 2. This Motion is ripe.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. LEGAL ANALYSIS

### A. Motion for Partial Summary Judgment

Plaintiff brings his FCRA claim under 15 U.S.C. § 1681-2(b). This section provides as follows:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> >
> > (C) report the results of the investigation to the consumer reporting agency;
> >
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

A recent District of Maryland opinion distills these provisions. *See Ausar-El v. Barclay Bank Del.*, Civil No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012) (citation omitted). In *Ausar-El*, Judge Messitte observes that "[s]ection 1681 s–2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information." *Id.* (citation omitted). "Furnishers of information typically are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." *Id.* (citation and internal quotation marks omitted). "Under § 1681s–2(b), a furnisher . . . is only required to investigate information it has provided if a consumer reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information." *Id.* (citations omitted). "Thus, to bring a claim under § 1681s–2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to [reasonably] investigate and modify the

7

inaccurate information." *See id.* (citations omitted); *cf. Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added) ("[Section] 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a **reasonable investigation** of their records to determine whether the disputed information can be verified.").

In light of this legal framework, partial summary judgment on Plaintiff's FCRA claim is improper. Plaintiff's basic argument is that the record shows that Defendant never held the BNC Note and that, therefore, Defendant's alleged reporting that Plaintiff's mortgage account was delinquent is per se inaccurate. This argument fails for two basic reasons. First, although Defendant has yet to produce the instrument by which it assumed the BNC Note, the documentation regarding the negotiations between Defendant, Stewart, and Anderson is sufficient for a reasonable juror to conclude that BNC transferred its interest in the BNC Note to Defendant. *See generally* Doc. No. 34-4 at 4–66; *see also* Doc. No. 32-1. Second, even assuming that a reasonable juror could only conclude that Defendant did not hold the BNC Note, this fact would not compel the conclusion that Defendant's reported information was inaccurate. Plaintiff alleges that Defendant inaccurately reported that his mortgage account was delinquent, not that Defendant had a right to enforce the BNC Note. This Court has found no authority proposing that the accuracy of a furnisher's statement that a consumer has a delinquent mortgage account turns on whether the furnisher is the noteholder or, more broadly, that a furnisher must own the underlying debt to accurately report that the associated account is in arrears. This notion is incompatible with the broad class of entities that may qualify as furnishers. *See Ausar-El*, 2012 WL 3137151, at *3; *cf.* Bd. of Governors of the Fed. Reserve Sys., Fed. Trade Comm'n, Report to Congress on the Fair Credit Reporting Act Dispute Process 9, 16 (2006),

http://www.ftc.gov/os/comments/fcradispute/P044808fcradisputeprocessreporttocongress.pdf. Indeed, courts have held that mortgage servicers qualify as furnishers under the FCRA. *See, e.g.*, *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012). It would also lead to the odd outcome in which furnishers of information would incur FCRA liability every time they otherwise accurately reported an account as delinquent yet did not own the underlying debt. In making this argument, it would appear that Plaintiff is trying to convert this FCRA action into an FDCPA action or, perhaps, one for quiet title or even misrepresentation. Whatever the case, Plaintiff's arguments and evidence clearly provide an insufficient basis for summary judgment in his favor.

Defendant makes a somewhat cursory request for summary judgment in its Opposition to Plaintiff's Motion for Partial Summary Judgment. Specifically, Defendant avers that Plaintiff's allegation that he satisfied the BNC Note is the "house of cards on which [his] claims rise and fall" and that, because the evidence establishes that he failed to satisfy the BNC Note, summary judgment against him is in order. The Court agrees that the evidence establishes that Plaintiff never satisfied the BNC Note. Indeed, there is evidence from which one could infer that Plaintiff realized a windfall based on the purported sale of the Property from him to Anderson. Nevertheless, Plaintiff has alleged that Defendant reported the BNC account as closed in June 2006 when, arguably, the record reflects that it was closed in March 2006. Although the Court harbors reservations about whether this seemingly minor inconsistency would suffice to create a triable issue on Plaintiff's 1681-2(b) claim, Defendant has yet to address this issue. Accordingly, although the Court is tempted to grant summary judgment in Defendant's favor, the Court will

allow the Parties to address this and any other relevant, material issues in formal motions for summary judgment.[1] [2]

For these reasons, the Court denies Plaintiff's Motion for Partial Summary Judgment.

**B.     Motion to Amend**

In pertinent part, Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a). Therefore, courts should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted). The standard for futility is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

In this case, Plaintiff fails to state a cognizable breach of contract claim. Plaintiff scantly and vaguely alleges that Defendant breached the "mortgage contract" by failing to "surrender the note" upon Plaintiff's satisfaction of the underlying debt. The "mortgage contract" Plaintiff presumably refers to is the Deed of Trust. Section 23 of the Deed of Trust states as follows: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs." Doc. No. 26-1 § 23, at 15. Plaintiff clarifies in his Reply that he does not allege that this provision obligates Defendant to release the Note to him personally. Doc. No. 27

---

[1] To prevail on his FCRA claim, Plaintiff would also have to create genuine disputes of material fact on whether Defendant's investigation of this alleged inaccuracy in Plaintiff's credit report was unreasonable.
[2] Plaintiff also moves for summary judgment on his defamation claim. This argument fails for the reasons stated in Part III.A.

at 3–4; *see also Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000) (stating that courts may consult parties' legal memoranda to clarify the meaning of ambiguous complaints). One cannot plausibly infer that Plaintiff has standing to enforce this provision. As Plaintiff alleges, the provision contemplates the release of the Note to the Trustee. However, Plaintiff is not the Trustee. Furthermore, Plaintiff does not argue that he is an intended beneficiary of this provision and the Deed of Trust contains no such language. To the extent that one could infer that Plaintiff is an intended beneficiary, Anderson would be one as well because the Deed of Trust defines "Borrower" as Plaintiff and Anderson. Yet Plaintiff lacks standing to enforce Anderson's rights and Plaintiff failed to even join Anderson as a party in his proposed Amended Complaint. *Cf.* Fed. R. Civ. P. 19(a)(1). Also, assuming the provision placed a duty on Defendant to release the Note to some entity other than Plaintiff or Anderson, Defendant arguably would have breached this duty in 2006, when the Note was satisfied. However, Plaintiff failed to assert his breach of contract claim until 2013. Due to Plaintiff's conduct in connection with the purported sale of the Property and lengthy delay in enforcing his purported rights under the Deed of Trust, the defenses of waiver, estoppel, laches, and/or unclean hands would likely bar Plaintiff's claim. For similar reasons, the Court finds that Plaintiff has asserted his breach of contract claim in bad faith. Accordingly, Plaintiff has failed to state a facially plausible breach of contract claim.

C.   **Motion to Extend**

The Court grants in part Plaintiff's Motion to Extend. The Court grants Plaintiff's request to extend the discovery deadline to the extent necessary to compel the production of the subpoenaed record from the credit bureaus. Furthermore, contrary to Defendant's wishes, the Court will extend the discovery deadline to allow Plaintiff to depose some Wells Fargo representatives. Although Plaintiff previously cancelled his noticed depositions, the record

reflects that Defendant challenged the depositions of certain representatives. The record further reflects that the Parties were engaged in settlement discussions and that these discussions were a factor behind Plaintiff's decision to cancel the one remaining deposition. Additionally, the record reflects that Plaintiff notified Defendant that he would seek to extend the discovery deadline if the settlement discussions fell through. Finally, Defendant acknowledges that the Parties still do not have all the information they seek to discover from the credit bureaus, and such information presumably would facilitate the deposition of any Wells Fargo representatives. All the same, the Court will allow Plaintiff to depose only Wells Fargo representatives as Plaintiff equivocally states that he will seek to depose representatives from the credit bureaus. What is more, Plaintiff has not adequately explained why he failed to depose representatives of the credit bureaus during the initial discovery period. Finally, the Court will limit the number of depositions to four as the record reflects that Plaintiff noticed only four depositions of Wells Fargo representatives. The Court does not know how long the extended discovery period will take. Therefore, the Court will direct the Parties to file a joint proposed amended scheduling order listing new dates for (1) the close of discovery and (2) dispositive motions.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Amend, **DENIES** Plaintiff's Motion for Partial Summary Judgment, and **GRANTS IN PART** Plaintiff's Motion to Extend.

|  |  |
|---|---|
| August 22, 2013 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |